UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ALEX HOWARD d/b/a SERVICEMASTER BY HOWARD | : | CIVIL ACTION NO. 2:21-cv-03181 |
| | : | |
| VERSUS | : | JUDGE: |
| | : | |
| FIRST UNITED PENTECOSTAL CHURCH OF DERIDDER, LA and CHURCH MUTUAL INSURANCE COMPANY | : | MAGISTRATE JUDGE: |

**********************************************************************

# COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes plaintiff, Alex Howard d/b/a ServiceMaster by Howard ("ServiceMaster-Howard"), who files this Complaint for Damages against the First United Pentecostal Church of DeRidder, LA ("First United") and Church Mutual Insurance Company ("CMIC"), as follows:

## I. PARTIES

1.

ServiceMaster-Howard brings this Complaint for Damages against the following:

A. Defendant First United Pentecostal Church of DeRidder, LA, a Louisiana non-profit religious corporation, domiciled and doing business in Beauregard Parish, Louisiana; and

B. Defendant Church Mutual Insurance Company, a foreign insurance corporation authorized to do and doing business in the State of Louisiana than can be served through the Louisiana Secretary of State.

2.

Plaintiff ServiceMaster-Howard is a sole proprietorship and a resident and domiciliary of the State of Alabama.

## II.  JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over the claims asserted in this Complaint based on diversity of citizenship pursuant to 28 USC § 1332. Venue is proper under 28 U.S.C.A. § 1391 as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

4.

Complete diversity exists between the parties.

5.

The amount in controversy exceeds $75,000.00.

## III.  FACTS

6.

On or about August 27, 2020, Hurricane Laura caused substantial damage to the area near and around southwest Louisiana, including DeRidder, Louisiana. First United, comprised of two buildings totaling almost 32,000 square feet, located at 120 Mahlon Street, DeRidder, Louisiana 70634 (the "Property"), suffered extensive damage from the hurricane.

7.

At the time of the damage, a policy issued by CMIC provided insurance coverage for damage to First United's Property. Upon information and belief, First United made a claim for the damage sustained to the Property by Hurricane Laura with CMIC, which assigned claim number 1423132 to First United's claim.

8.

ServiceMaster-Howard was contacted regarding First United's desperate need for a water mitigation and restoration contractor. First United advised ServiceMaster-Howard that it had been unable to locate or retain a restoration contractor to perform the necessary remediation work at the Property.

9.

On August 31, 2020, First United entered into a contract, entitled an Authorization for Repairs and Payment, with ServiceMaster-Howard for emergency cleaning, water mitigation and restoration services (the "Contract"). Sarah Lewis, executive pastor of First United, signed the Contract with ServiceMaster-Howard on behalf of First United.

10.

The Contract between ServiceMaster-Howard and First United, executed on August 31, 2020, states:

> Owner [First United] agrees that if any invoice for services shall not be paid when due, the balance shall bear interest of 12% annum. The makers, endorsers, guarantors, or sureties hereby jointly and severally agree to pay all costs of collection including reasonable attorneys' fees. Unless otherwise prohibited by state law, if any unpaid balance is referred to an attorney for collection, Owner authorizes any attorney of record to confess judgment to be entered by any Court that may have jurisdiction, at any time after the

default in payment shall occur and hereby waives all exceptions to the extent permitted by law.

Owner further understands that emergency services are necessary steps taken to prevent additional damage to the building and/or contents and that restoration services may include cleaning, drying, repair, resurfacing, refinishing and/or replacement of building materials and contents.

11.

The parties agreed that ServiceMaster-Howard would perform the work, and after the work was completed, it would submit an invoice for all work and services performed for payment. In accordance with industry standards, ServiceMaster-Howard utilized an Xactimate pricelist to prepare its invoice for the work.

12.

First United's insurance company, CMIC, was aware of and approved all work performed at the Property for the duration of the project. Both First United and CMIC approved the work on an ongoing basis throughout the project.

13.

In accordance with the terms of the Contract, ServiceMaster-Howard began the cleaning and restoration work at the Property on August 31, 2020, the same day the Contract was signed, arriving on site at approximately 11:30 AM.

14.

To complete the mitigation and restoration work, on an emergency basis, ServiceMaster-Howard immediately invested substantial resources into the project, including drying equipment. This substantial effort was required to quickly mitigate the water damage to First United and satisfy First United's desire to save the Property. This

drying equipment was utilized for a total period of nine days, concluding on September 9, 2020.

15.

By September 9, 2020, ServiceMaster-Howard confirmed that the dry-out process of the Property had been completed.

16.

In performing the restoration services at the Property, ServiceMaster-Howard followed the Institute of Inspection Cleaning and Restoration Certification (IICRC) S500, the manual that sets the applicable standards and protocols for water mitigation and restoration work.

17.

Upon completion of the work by ServiceMaster-Howard, Sarah Lewis, on behalf of First United, executed a Certificate of Completion and Satisfaction with Emergency Services (the "Certificate").  That Certificate stated: "The undersigned hereby certifies that the emergency services provided by the Contractor at the Work Site have been completed to the Insured's Satisfaction."

18.

Consistent with the work performed and services provided to First United, ServiceMaster-Howard prepared an estimate/invoice using Xactimate.  That estimate totaled $269,260.62 and was submitted to First United and CMIC for payment.

19.

On October 13, 2020, First United remitted partial payment toward the outstanding invoice, in the total amount of $50,000.00. That payment was made by five separate checks, all issued on October 13, 2020, each in the amount of $10,000.00. Those checks bore Check Nos. 1058, 1059, 1060, 1061, and 1063. These payments left a remaining balance owed of $219,260.62.

20.

Upon information and belief, CMIC reimbursed First United for this partial payment.

21.

However, no further payments have been made to ServiceMaster-Howard toward the remaining balance owed, despite multiple requests for payment. Currently, First United and CMIC owe a total of $219,260.62, plus interest and attorneys' fees (as recoverable according to the Contract).

22.

Neither First United nor CMIC has paid the balance owed for the invoice submitted by ServiceMaster-Howard, despite amicable demand. ServiceMaster-Howard was forced to personally fund the entire work, causing financial hardship and lost business opportunities. Now, almost twelve months after ServiceMaster-Howard completed the Project, it has not been paid the remaining amount owed for its substantial work.

## COUNT I – BREACH OF CONTRACT

The allegations in Paragraphs 1-22 are incorporated herein, in extenso.

23.

ServiceMaster-Howard and First United entered into a valid contract for the cleaning and restoration work performed on the Property.

24.

ServiceMaster-Howard performed its work in accordance with industry standards, and in accordance with the parties' Contract. ServiceMaster-Howard performed all cleaning and restoration work in a timely manner. Both First United and CMIC were kept advised of, and approved (both expressly and implicitly), all work performed by ServiceMaster-Howard. By the end of the work on the Property, ServiceMaster-Howard had successfully saved the church, as requested.  But, after the work was completed, only $50,000.00 of the $269,260.62 was paid by First United.  Both First United and CMIC refused to pay any of the outstanding balance due, in the amount of $219,260.62, in accordance with the parties' Contract.

25.

The Contract between the parties expressly provides that if any invoice for services is not paid when due, the balance shall bear interest of 12%, and First United will be liable for all costs of collection, including attorneys' fees.

26.

Accordingly, First United is liable to ServiceMaster-Howard for $219,260.62, the remaining balance owed under the Contract, plus interest at 12%, costs, attorneys' fees and

all other damages arising from First United's failure to pay, as provided for in La. R.S. 9:2781, the parties' Contract and/or other provisions of the law.

27.

In addition, First United is liable to ServiceMaster-Howard for additional business losses incurred as a result of First United's failure to pay pursuant to the parties' Contract, including lost business opportunities, damages incurred for not having the monies paid by First United, and other consequential damages.

## COUNT II — NEGLIGENCE

The allegations in Paragraphs 1-27 are incorporated herein, in extenso.

28.

In contracting with ServiceMaster-Howard to perform restoration and cleaning services on its Property, First United, by and through its employees and representatives, had a duty to conduct business with ServiceMaster-Howard in good faith.

29.

First United expressly authorized ServiceMaster-Howard to perform work on the Property, and First United had a duty to pay for those services. First United further made repeated, express representations that ServiceMaster-Howard would be paid for its work on the Property, and therefore had a duty to pay for those services.

30.

First United breached that duty by allowing ServiceMaster-Howard to perform over $260,000 worth of work on the Property, without ever intending to pay for such work and services, even after certifying that it was satisfactorily completed.

31.

ServiceMaster-Howard is entitled to all damages arising out of First United's breach and its negligence, including the cost of the work and business losses incurred by ServiceMaster-Howard arising from First United's failure to pay for the work or appropriately make claims for payment for the work with CMIC.

32.

Further, CMIC is responsible for the damages incurred by ServiceMaster-Howard based on its representation that ServiceMaster-Howard would be paid for the work. While the work was ongoing, CMIC and its authorized representatives approved the continuation of work on the Property by ServiceMaster-Howard.

33.

Then, CMIC refused to approve or make payments pursuant to the terms of First United's insurance policy. The breach of this duty resulted in damages incurred by ServiceMaster-Howard, for which CMIC is responsible.

**COUNT III – DETRIMENTAL RELIANCE**

The allegations in Paragraphs 1-33 are incorporated herein, in extenso.

34.

At all times pertinent, First United, its representatives, and its insurer, CMIC, made express and implied representations that ServiceMaster-Howard had authority to perform work on the Property, and that ServiceMaster-Howard would be paid for such services. ServiceMaster-Howard was justified in relying on the representations made by First United representatives and CMIC and its representatives.

35.

ServiceMaster-Howard performed over $260,000 worth of work (over a 9-day time period) to its detriment on the justified reliance of First United, its representatives, and CMIC and its representatives, actions and assertions that it would be paid for that work.

36.

Thus, ServiceMaster-Howard is entitled to recover damages incurred based upon its reliance on express and implied representations and statements by First United, its representatives, CMIC, and its representatives.

## COUNT IV – UNJUST ENRICHMENT

The allegations in Paragraphs 1-36 are incorporated herein, in extenso.

37.

In the alternative, First United and CMIC have been unjustly enriched by ServiceMaster-Howard's performance of its work. After the hurricane caused extensive damage to the Property, ServiceMaster-Howard performed substantial, emergency cleaning, mitigation and restoration work required to restore the property to its pre-loss condition. As such, ServiceMaster-Howard is entitled to recover just compensation of First United's enrichment, or ServiceMaster-Howard's loss, under theories of unjust enrichment and/or quantum meruit.

38.

Further, CMIC has been enriched by not having to pay the amount it owes according to the terms of First United's insurance policy.

39.

ServiceMaster-Howard reserves the right to amend and/or supplement its Complaint after further discovery.

**DEMAND FOR JURY TRIAL**

ServiceMaster-Howard prays for and is entitled to a trial by jury.

**WHEREFORE,** premises considered, ServiceMaster-Howard prays that its Complaint for Damages be deemed good and sufficient, and that after due proceedings be had, the Court enter judgment in favor of ServiceMaster-Howard against First United and CMIC for the damages outlined in the Complaint, to include the amount owed for the work completed, other breach of contract damages and consequential damages, together with interest, costs, attorneys' fees and other damages found reasonable in the premises;

AND FOR ALL GENERAL AND EQUITABLE RELIEF.

RESPECTFULLY SUBMITTED,

BY:   /s/ Christopher K. Jones
CHRISTOPHER K. JONES (#28101)
CHELSEA A. PAYNE (#35952)
**KEOGH COX & WILSON, LTD**
701 Main Street
Baton Rouge, Louisiana 70802
Telephone: (225) 383-3796
Facsimile: (225) 343-9612
Email:   cjones@keoghcox.com
             cpayne@keoghcox.com
*Counsel for Alex Howard d/b/a
ServiceMaster by Howard*