UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ALEX HOWARD** | **CASE NO. 2:21-CV-03181** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **FIRST UNITED PENTECOSTAL CHURCH OF DERIDDER LA ET AL** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 27] filed by defendant Church Mutual Insurance Company, S.I. ("Church Mutual") and a Motion to Dismiss [doc. 29] filed by Alex Howard d/b/a ServiceMaster by Howard's ("ServiceMaster"). Both motions were filed under Federal Rule of Civil Procedure 12(b)(6) and both are opposed. Docs. 31, 32.

### I.
### BACKGROUND

This suit arises from ServiceMaster's efforts to recoup payment for mitigation work it did at the premises of plaintiff First United Pentecostal Church of DeRidder, Louisiana ("First United"). According to the amended complaint, First United, a church in DeRidder, Louisiana, was damaged when Hurricane Laura made landfall in Southwest Louisiana on August 27, 2020. Doc. 25, ¶ 6. At that time, First United had property insurance under a policy issued by Church Mutual. *Id.* at ¶ 7. First United contacted ServiceMaster, advising that it needed someone to perform restoration and remediation work at the church. *Id.* at ¶ 8. First United and ServiceMaster entered into a written contract, the "Authorization for Repairs and Payment," on August 31, 2020. *Id.* at ¶ 9. The contract provides that any unpaid

1

balance on an invoice will bear interest at a rate of 12 percent per annum and that "[t]he makers, endorsers, guarantors, or sureties hereby jointly and severally agree to pay all costs of collection including reasonable attorneys' fees." *Id.* at ¶ 10.

ServiceMaster further alleges that it immediately invested substantial resources to begin the project and mitigate the water damage to First United, and completed the dry-out process by September 9, 2020. *Id.* at ¶¶ 13–15. Upon completion of the work, it prepared an estimate/invoice of its work using Xactimate software and submitted an invoice in the amount of $269,260.62 to First United and its insurer, Church Mutual, for payment. *Id.* at ¶ 18. First United paid $50,000 on October 13, 2020, but has not made any further payments since that date. *Id.* at ¶¶ 19–22.

ServiceMaster filed suit against First United and Church Mutual in this court on August 31, 2020, invoking the court's diversity jurisdiction and raising claims of breach of contract, negligence, detrimental reliance, and unjust enrichment. Doc. 1. Church Mutual moved to dismiss the claims against it under Rule 12(b)(6), arguing that there was no privity of contract as required to support the breach claim and that the facts also provide inadequate support for ServiceMaster's other claims. Doc. 6. The court agreed but dismissed the claims without prejudice to ServiceMaster's right to amend. Doc. 23. Meanwhile, First United filed a crossclaim for breach of insurance contract and bad faith against Church Mutual and a counterclaim for unfair trade practices against ServiceMaster. Doc. 9. ServiceMaster moved to dismiss the counterclaim under Rule 12(b)(6) or, alternatively, for a more definite statement. Doc. 18. The court granted the motion for a more definite statement and denied the motion to dismiss. Doc. 23.

ServiceMaster has now filed an amended complaint, and First United has filed an amended cross-claim for unfair trade practices against ServiceMaster. Docs. 25, 26. Church Mutual again moves to dismiss the claims brought against it by ServiceMaster, asserting that the revised allegations do not cure ServiceMaster's inability to show a contractual relationship or any other basis for relief against the insurer. Doc. 27. ServiceMaster moves to dismiss the counterclaim, asserting *inter alia* that First United waived its right to challenge the work when it signed a certificate of completion. Doc. 29. Both motions are opposed. Docs. 31, 32.

## II.
## LAW & APPLICATION

### A. Legal Standards

Rule 12(b)(6) allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*,

3

495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### B. Application

#### 1. Church Mutual's Motion

ServiceMaster has raised claims for breach of contract, negligence, unjust enrichment, and detrimental reliance against Church Mutual. Church Mutual moves to dismiss all of these claims under Rule 12(b)(6). Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Accordingly, the court evaluates the substance of each claim under Louisiana law.

##### a. Breach of contract

"Under Louisiana law, no action for breach of contract may lie in the absence of privity of contract between the parties." *Beauregard Quarters, LLC v. Action Concrete Constr., Inc.*, 2021 WL 2942514, at *3 (M.D. La. Jul. 13, 2021) (citing *Pearl River Basin Land and Dev. Co., L.L.C. v. State, ex rel. Governor's Office of Homeland Sec. and Emergency Preparedness*, 29 So. 3d 589, 592 (La. Ct. App. 1st Cir. 2009)). ServiceMaster has alleged that both Church Mutual and First United "were kept advised of, and approved (both expressly and implicitly), all work" performed by ServiceMaster and that Church Mutual reimbursed First United for the $50,000 it paid to ServiceMaster. Doc. 1, ¶¶ 21, 26.

4

It has also alleged that, in addition to the written contract, an oral contract existed with Church Mutual:

<blockquote>

13.

[Church Mutual] was aware of and approved all work performed at the Property for the duration of the project. Both First United and [Church Mutual] approved the work on an ongoing basis throughout the project. [ServiceMaster] understood that [Church Mutual] was responsible for approving and paying for all mitigation work it completed; thus, [ServiceMaster] communicated directly with [Church Mutual] about the project, understanding that its approval was necessary for it to receive payment for the work. Accordingly, an oral contract was created between [ServiceMaster and Church Mutual] for the completion of the work on the Property, for which [Church Mutual] would pay [ServiceMaster] directly[.]

. . . .

25.

[ServiceMaster and Church Mutual] entered into a valid oral contract for the cleaning and restoration work performed on the property. On information and belief, after First United entered into the Contract, [Church Mutual] was made aware of the terms of the Contract between [ServiceMaster] and First United. Further, on information and belief, [Church Mutual] represented to [ServiceMaster that it would be paid according to the terms set forth in First United and [ServiceMaster's] Contract. This oral contract was created as a result of [Church Mutual's] agreement to the terms of [ServiceMaster's] Contract with First United, and in connection with [Church Mutual's] approval of [ServiceMaster's] work on the Property prior to payment.

</blockquote>

Doc. 25, ¶ 13. It further alleged that both the oral and written contracts were breached when Church Mutual and First United failed to pay the outstanding balance.

Church Mutual maintains that these allegations fail to state a claim for breach, because any alleged agreement by Church Mutual was not in writing. The Louisiana Civil Code provides, "An obligor and a third person may agree to an assumption by the latter of an obligation of the former. To be enforceable by the oblige against the third person, the

5

agreement must be made in writing." La. Civ. Code art. 1821. ServiceMaster responds with code sections relating to oral agreements, but both of these contain caveats for where the law requires the agreement to be reduced to writing.[1] *Id.* at arts. 1846, 1927. The court agrees that Church Mutual's obligations under any alleged oral contract arise from an assumption of obligations under the written contract between ServiceMaster and First United, and that the absence of a writing is thus fatal to ServiceMaster's claim. Accordingly, the motion is granted in this regard.

### b. Negligence and Detrimental Reliance

ServiceMaster asserts what amounts to a claim of negligent misrepresentation, alleging that it incurred damages when it continued the work in reliance on Church Mutual's assurances that it would be paid. To succeed on a theory of negligent misrepresentation, a plaintiff must show that "(1) the defendant owe[d] a duty to supply correct information; (2) the defendant breache[d] that duty; and, (3) the plaintiff suffer[ed] damages resulting from a justifiable reliance on that misrepresentation."[2] *Collins v. State Farm Ins.*, 2007 WL 1296240, at *3 (E.D. La. Apr. 30, 2007) (citing *Chiarella v. Spirit Spectrum, LLP*, 921 So. 2d 106, 123 (La. App. 4 Cir. 2005)). The duty of care in a negligent misrepresentation claim is not limited to cases where there is a fiduciary relationship. *Navarre Chevrolet, Inc. v. Hyundai Motor Corp.*, 2019 WL 2166679, at *8

---

[1] Louisiana Civil Code article 1846 provides methods of proof for oral contracts, depending on the value, "[w]hen a writing is not required by law[.]" Meanwhile, Article 1927 provides that offer and acceptance to a contract may be made orally, in writing, or by action or inaction indicative of consent "[u]nless the law prescribes a certain formality for the intended contract[.]"

[2] Louisiana case law is unclear on whether negligent misrepresentation may arise from a representation based on future conduct, such as a promise to pay. *Campo v. BP Am., Inc.*, 2012 WL 1978283, at *3 (E.D. La. Jun. 1, 2012).

(W.D. La. Feb. 4, 2019) (citing *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007, 1015 (La. 1993)). However, the facts must establish some prior existing personal or professional relationship requiring disclosure of the relevant information. *Miller v. Lowe*, 2009 WL 4730201, at *5 (W.D. La. Dec. 4, 2009).

ServiceMaster also brings a claim of detrimental reliance. Under Louisiana law, a claim of detrimental reliance requires (1) a representation by conduct or word, (2) justifiable reliance on the representation, and (3) a change in position to the plaintiff's detriment as a result of the reliance. *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004). The claim is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence" and usually functions in the absence of an enforceable contract between the parties. *Id.* (quoting *Babkow v. Morris Bart, PLC*, 726 So.2d 423, 427 (La. Ct. App. 4th Cir. 1998)).

On the first motion to dismiss, the court found these claims inadequately pled due to ServiceMaster's failure to allege affirmative representations by Church Mutual on its payment obligations. The court left aside the question of Church Mutual's duty in terms of providing information on coverage and indemnity to its insured's contractors. In the amended complaint ServiceMaster alleges that Church Mutual represented that it would be paid in accordance with the terms of the contract with First United. Construing all allegations in a light most favorable to ServiceMaster, and allowing that discovery might develop facts about the relationship for the two and Church Mutual's associated duty/the

7

reasonableness of ServiceMaster's reliance, the court finds these claims adequate to survive the motion to dismiss.

### 2. ServiceMaster's Motion

ServiceMaster moves to dismiss the amended counterclaim for unfair trade practices filed by First United. The Louisiana Unfair Trade Practices Act ("LUTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" and affords a private right of action to any person who suffers ascertainable loss as a result of such conduct. La. Rev. Stat. 51:1405(A). To state a claim under this statute, the plaintiff must allege conduct that "offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantial[ly] injurious." *Sheramine Svcs., Inc. v. Shell Deepwater Prod. Co., Inc.*, 35 So.3d 1053, 1059 (La. 2009). LUTPA does not offer redress for mere negligence. *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).

In its amended counterclaim First United alleges that ServiceMaster used "unfair trade practices in an effort to bill and collect for monies not owed." Doc. 26, ¶ 2. It supports this allegation by referencing an advisory audit performed by CodeBlue 360 ("CodeBlue"), a summary of which is attached to the complaint. *See* doc. 26, att. 2. The audit was performed to determine what charges were supported by industry standards. *Id.* In the summary CodeBlue notes several alleged flaws with ServiceMaster's invoice, including: the lack of drying logs or photos provided by ServiceMaster, the lack of moisture readings to determine what materials were affected, and discrepancies between the square footage listed in the invoice and the appropriate areas of mitigation found by CodeBlue. *Id.*

8

CodeBlue also found that, while ServiceMaster billed $221,036.33 for mitigation services, only $84,377.15 was supported by industry standards. *Id.*

First United also alleges that the work exceeded $50,000.00 and yet ServiceMaster did not have a Louisiana contractor's license, as required under Louisiana law. Doc. 26, ¶¶ 15–23. It further alleges that ServiceMaster deceptively held itself out as a licensed contractor while working on First United's property. *Id.* at ¶¶ 24, 26. Accordingly, it maintains that the contract is a nullity and that ServiceMaster's recovery is limited to the actual cost of its services and materials. *Id.* at ¶ 27.

In response, ServiceMaster contends that First United waived its right to contest amounts owed when it signed a certificate of completion. This document, however, is not in the record nor is it referenced in the counterclaim such that it could be reviewed under the standards of Rule 12(b)(6). Accordingly, the waiver defense is deferred to summary judgment.

ServiceMaster also maintains that no contractor license was required for "dewatering work," and references a document on the Louisiana State Licensing Board for Contractors. *See* La. State Licensing Bd. for Contractors, "Frequently Asked Questions," *available at* https://lslbc.louisiana.gov/frequently-asked-questions/ (last visited Jan. 14, 2022). This fact, however, does not undermine the other allegations in the complaint. The specific allegations of deceptive and inflated billings, supported by the audit from CodeBlue, are sufficient to support a claim for unfair trade practices. Accordingly, the motion will be denied.

9

## III.
### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 27] filed by Church Mutual will be **GRANTED IN PART** and **DENIED IN PART**, with the claim for breach of contract **DISMISSED WITH PREJUDICE**. The Motion to Dismiss [doc. 29] filed by ServiceMaster will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 20th day of January, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**